## Wehrman et al. v. Steltenkamp et al.

March 28, 1947.

Rodney G. Bryson and Joseph P. Goodenough, Judges.

410

Rogers & Rogers for appellants.

Marion W. Moore for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellees, plaintiffs below, constitute the Kenton County Civil Service Commission; appellants are the county judge and members of the fiscal court, who had succeeded in part their predecessors in office. Such pleadings as were filed fairly raised the issue as to the constitutionality of an Act of the 1944 General Assembly, Acts 1944, Ch. 131, p. 252, entitled "An Act to provide for Civil Service and pensions for county employes in coun-

ties containing cities of the Second Class and having a population of more than 80,000.'' The first section grants the power to such counties, and the Act as a whole provides for creation of a civil service board, and its method of operation, &c., also for creation and maintenance of a pension fund for employees.

After effective date of the Act, the fiscal court then functioning, on September 14, 1944, by resolution appointed the Commission, and fixed the date when it should begin to serve, October 1, 1944. On October 4th the court and Commission set up classifications of employees and their compensation. Later the court amended its eligible list by including certain officers who, as is claimed by appellant, were not subject to the Act. This fact, discussed in briefs, was to some extent considered by the Court, but we find it unnecessary to discuss this phase.

In 1945 appellant Wehrman was elected county judge, and two newly elected commissioners succeeded two former ones. These took over in January 1946, and later declined to observe the edicts of the resolution, or the provisions of the Act, and as alleged in petition, denied the request of employees to set up a pension plan, contending that the Act was contrary to the intent and spirit of Sections 59, 60 and 141 of the Constitution. An answer transformed the proceeding into one for declaration of rights, and it was so treated by the court.

The matter was submitted to the two presiding judges of the Kenton circuit court, and in the joint opinion, pointing to a number of cases in which we have dealt with the first two sections of the Constitution, supra, they concluded that the Act was valid. The fiscal court was mandatorily directed to comply with the provisions of 78.020 et seq., KRS, in the matter of employment of any and all *employees* embraced by the statutes, and to follow the resolutions as to their classifications and salaries. That there was doubt as to the extent the fiscal court had gone in classification of certain persons claimed to be officers, not employees, the judgment (we think correctly) permanently enjoined defendants ''from further violation of KRS 78.020—78.140, and from further employment of a person as an employee of the fiscal

court, by means other than pursuant to the provisions of the statute.''

Without undertaking to analyze the sections of the Constitution, supra, it is apparent that the dominating question presented is whether or not, having in mind their purpose, intent and spirit, the Act constitutes a legal picking out of one county and providing for civil service and pension because it has a population of more than 80,000 (93,000, 1940 census) and embracing a second class city.

At the outset we may concede the correctness of appellee's suggestion, agreed to by the court, that courts in reviewing legislative Acts are not to be concerned with the wisdom and appropriateness of that body in enacting laws; however, the court may examine a statute of this character for the purpose of determining whether it has a reasonable relation to a proper legislative purpose; to ascertain whether the statute is arbitrary, discriminatory, or in anywise transcends constitutional inhibitions. Our reports are replete with cases in which we have had questions similar to the one now under consideration.

Appellees in brief insist that the classification is valid since a county with such dense population as has Kenton, requires more employees than others of less dense population; that in such counties, Kenton in particular, it would be impracticable or impossible for the fiscal court to pass on the qualifications of its individual employees, because of the mass and complexity of other necessary governmental duties. Further, that the population justifies the establishment of a pension system for its employees. The argument particularly as to the pension system might well apply to any county in the state, regardless of population, certainly in such counties as had more, or little less population, not containing a second class city; the same might be said of the heavy duties placed on the governing bodies of such counties.

Since counsel mentioned several counties which embraced cities of the second class which had large, but not so large populations as Kenton, in arguing that under the Act those counties could take advantage of the Act when reaching the designated population, we may

mention them. There are six such counties, including Kenton; of those, Fayette had according to 1940 census a population just a few short of 79,000, and Campbell, adjoining Kenton, 72,000. Others ranged from 42,000 to more than 52,000. Harlan and Pike, with cities of lower classifications, had respectively 75,000 and 72,-000, and as far as counties as such are concerned, are more densely populated than Kenton. The Act by its terms excludes all these counties, as well as Jefferson with around 400,000 population, or at least they cannot have its advantage, though they may have an equal or greater number of employees, and whose officers have just as arduous and diversified duties; it may be observed that of Kenton's 93,000 population, more than 60,000 live in Covington (Census 1940).

Appellee also takes the position that since the Act pertains to the organization or government of Kenton County, as a county, the fact would justify the classification. This conclusion is based on an excerpt taken from Thompson v. Shipp, 298 Ky. 805, 184 S. W. 2d 245, a case which involved several questions other than the Act was not a proper classification, which question was not discussed at length. We quoted from Mannini v. McFarland, 294 Ky. 837, 172 S. W. 2d 631, 632, ''A classification according to population and its density, and according to the division of cities into classes, is not a natural and logical classification and cannot be sustained unless the Act pertains to the organization or government of cities and towns or is incident thereto, or unless the classification has a reasonable relation to the purpose of the Act.'' We said that the writer of the opinion did not use the words ''cities and towns'' in their restricted sense, but intended to refer to the organization and government of municipalities and local governments, but apparently upheld validity on the grounds that the population, density, the wealth of the community, size of the towns, the existence of a court of continuous session, were proper and logical elements upon which to base valid classification.

We were dealing there with an Act in respect of the compensation of sheriff in counties having the elements set out in the Act, and pointed out that in such a county the sheriff's duty was proportioned by the property assessed and taxed, attention to the continuous court, his

responsibilities in respect to the suppression of crime &c, thus by a combination of elements there was a reasonable classification.

That the writer of the McFarland opinion intended to make a distinction between cities and towns which are directed to be classified by the Constitution, and are so by the legislature, and counties which are not classified is evidenced. After referring to Klein et al. v. City of Louisville et al., 224 Ky. 624, 6 S. W. 2d 1104 and James v. Barry, 138 Ky. 656, 128 S. W. 1070 (cited in the opinion as laying down what was conceived to be a true rule) and referring to and distinguishing others, the opinion continues: "The General Assembly, probably taking the cue from cases thus departing from the correct rule," that is, upholding classification of cities based on population and density, "in many instances went further and attempted classifications based on districts or counties containing cities of a certain class although the size or class of cities in such * * * counties had no reasonable relation to the purposes of the acts. Legislation of this character has been frequently condemned."

The court cited as exemplary, Droege v. McInerney, 120 Ky. 796, 87 S. W. 1085; Neutzel v. State Tax Commission, 205 Ky. 124, 265 S. W. 606; Chandler v. City of Louisville, 277 Ky. 79, 125 S. W. 2d 1026, and Community Hospital v. Barren County Fiscal Court, 244 Ky. 672, 52 S. W. 896. These cases, and particularly the last named, point out that that classification based on the fact that a county contains a city of a certain class is not sufficient to uphold an Act unless there are natural, distinctive or logical reasons to support the purpose of the Act. So, it is to be gathered from these and other cases, that the fact that a county embraces a city of a certain class, is not alone a sound basis for upholding the Act. This leads to the suggestion that density of population is not a sufficient support. While this may be a proper foundation, it is only so if there exists some natural, logical or reasonable basis of support to take it out of the category of arbitrary selection.

The contention that the density of population of Kenton is such that it may require more employees than other counties (of nearly like density), and duties of the fiscal court are such that it cannot investigate, classify

and fix the compensation of its employees, and plan for pensions and civil service is desirable, present reasons which are, or may be, applicable to the counties adverted to elsewhere in this opinion, which may not have advantage of the Act. That the grounds as to duties and ability of the fiscal court are not sufficient supporting cause is evidenced by our opinions in the Neutzel case, supra, and Burton v. Mayer, 274 Ky. 245, 118 S. W. 2d 161.

In closing, while Sec. 141 of the Constitution and its applicability are not discussed to any extent, it is submitted that the requirement of the Act taking from the fiscal court power to select and name its employees, rather than to select them from a list of eligibles furnished by the Commission, may violate Sec. 141 of the Constitution. See Barry v. Giles, 300 Ky. 22, 187 S. W. 2d 827, citing with approval Beauchamp v. Silk, 275 Ky. 91, 120 S. W. 2d 765-768.

A consideration of the many cases cited pro and con leads us to the conclusion that the Act is special or local, and violates the spirit and letter of the Constitution. Therefore we are compelled to reverse the judgment with directions to set it aside and enter one in conformity herewith.

Judgment reversed.